UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

─────────────────────────────────────────

| | |
|---|---|
| KORI MOSSER and PAUL MOSSER, *individually* : | |
| *and as parents and natural guardians of* K.M. *a* : | |
| *minor*, : | |
|         Plaintiffs, : | |
| : | |
|     v. : | No. 5:23-cv-1785 |
| : | |
| LAURI MCWILLIAMS, JAMES : | |
| SCHNYDERITE, MATTHEW LINK, : | |
| NORTHERN LEHIGH SCHOOL DISTRICT, : | |
| JOHN DOES I-V, : | |
|         Defendants. : | |

─────────────────────────────────────────

**O P I N I O N**
**Defendants' Motion to Dismiss, ECF No. 9 – Granted in part, Denied in part**

**Joseph F. Leeson, Jr.**                                                        **October 3, 2023**
**United States District Judge**


## I.   INTRODUCTION

K.M. is a student at Peter's Elementary School.  At the start of the 2021-22 school year, she was assigned to Lauri McWilliams' classroom.  Early that fall, McWilliams had considerable difficulty in managing the child's classroom behavior.  McWilliams reported this to the child's parents as well as her school principal.  The difficulty culminated in an incident where McWilliams scratched and/or gouged K.M.'s neck.  Plaintiffs now assert claims for violation of K.M.'s constitutional rights as well as other state law violations against Lauri McWilliams; James Schnyderite, the principal of Peter's Elementary School; Mathew Link, the Superintendent of Northern Lehigh School District ("NLSD"); and Northern Lehigh School District, the school district in which Peter's Elementary School is located. Because the allegations are insufficient to state violations of a constitutional right, the Motion to Dismiss is granted in part.

## II.    BACKGROUND

The factual allegations, taken from the Complaint, *see* Compl., ECF No. 1, are as follows:

K.M. was six-years-old in the fall of 2021 when she started her first grade year in Lauri McWilliams' classroom.  *Id.* ¶¶ 22-23.  Unfortunately, that year began poorly.  As soon as September, McWilliams began sending reports to K.M.'s parents, Kori and Paul Mosser ("Parents"), letting them know their child was "'defiant, engaging in 'undesirable behaviors,'" and that K.M. was "'losing it' during the school day."  *Id.* ¶ 24.  The Parents believed this behavior was inconsistent with K.M.'s home behavior.  *Id.* ¶ 36.  Nevertheless, McWilliams' classroom behavior reports continued through the fall, noting K.M.'s class disruptions, her refusal to participate, aggression toward other children, and otherwise uncontrollable behaviors. *Id.* ¶¶ 26, 34.

In September 2021, McWilliams told the Parents that she believed K.M. should be moved to another classroom.  *Id.* ¶ 28.  By then, Principal Schnyderite and Superintendent Link knew that McWilliams felt overwhelmed and incapable of handling K.M., yet they declined to move the child to another classroom.  *Id.* ¶¶ 27, 29-30.  Given the escalating problems between K.M. and McWilliams, the Parents contacted Schnyderite in an effort to facilitate K.M.'s classroom reassignment.  *Id.* ¶ 32.  However, K.M. was not reassigned in the fall of 2021.  *Id.* ¶ 35.

The foregoing culminated in the incident of January 13, 2022, which gives rise to this suit.  *Id.* ¶ 37.  Upon visiting the school to pick up her daughter, Kori Mosser was directed to Schnyderite's office.  *Id.* ¶ 37.  There, she found her daughter holding an ice pack to her neck to treat scratches, abrasions, and gouge marks on her neck and throat.  *Id.* ¶¶ 38-39.  Earlier in the day, McWilliams had caused these injuries by grabbing K.M. by the throat/neck and digging her

nails into K.M.'s skin.  *Id.* ¶ 40.  In the aftermath of the incident, from January 13th to 26th,

K.M. was directed to attend school virtually.  *Id.* ¶ 44.  Defendants ultimately reassigned K.M. to

another classroom and K.M. returned to school weeks later.  *Id.* ¶¶ 47-48.

In Count I of their Complaint, Plaintiffs assert a state-created danger claim against all

Defendants[1]  pursuant to 42 U.S.C. § 1983.  Count II asserts a *Monell* claim against Schnyderite,

Link, and NLSD ("NLSD Defendants").  Count III asserts a claim arising under Section 1983

against all Defendants for violating K.M.'s bodily integrity.  Counts IV and V assert state-law

actions in assault and battery as well as intentional infliction of emotional distress against

McWilliams.

Defendants filed a Motion to Dismiss, *see* ECF No. 9, arguing, *inter alia*, that: 1) the

Complaint contains no allegations against John Does I-V; 2) the state-created danger claim fails

because the harm to K.M. was unforeseeable and does not shock the conscience; 3) the *Monell*

claims fail because the Complaint avers no facts which demonstrate a pattern of constitutional

violations; 4) the bodily integrity claim fails because Plaintiffs have not alleged a serious injury

or malicious and sadistic intent to cause harm; and 5) the Court should dismiss Plaintiffs' state

law claims where they have failed to adequately plead a federal cause of action.

## III.   LEGAL STANDARDS

### A.  Motion to Dismiss – Review of Applicable Law

Under Rule 12(b)(6), the court must "accept all factual allegations as true [and] construe

the complaint in the light most favorable to the plaintiff."  *Phillips v. Cnty. of Allegheny*, 515

---

[1]      Plaintiffs have also named John Does I-V as Defendants on Counts I and III.  In the case
caption, the Does have the same address as NLSD and Matthew Link, the NLSD Superintendent.
However, the factual averments of the Complaint make no mention of the John Does whatsoever.
Accordingly, all claims against John Does I-V will be dismissed.

F.3d 224, 233 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d

Cir. 2002)) (internal quotation marks omitted).  Only if "the '[f]actual allegations . . . raise a right

to relief above the speculative level'" has the plaintiff stated a plausible claim.  *Id.* at 234

(quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 540, 555 (2007)).  "A claim has facial plausibility

when the plaintiff pleads factual content that allows the court to draw the reasonable inference

that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678

(2009).  However, "the tenet that a court must accept as true all of the allegations contained in a

complaint is inapplicable to legal conclusions."  *Id.*  (explaining that determining "whether a

complaint states a plausible claim for relief . . . [is] a context-specific task that requires the

reviewing court to draw on its judicial experience and common sense").  "In deciding a Rule

12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint,

matters of public record, as well as undisputedly authentic documents if the complainant's claims

are based upon these documents."  *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010).

Additionally, "a document integral to or explicitly relied upon in the complaint may be

considered."  *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997)

(internal quotations omitted).  The defendant bears the burden of proving that a plaintiff has

failed to state a claim upon which relief can be granted. *See Hedges v. United States*, 404 F.3d

744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d

Cir. 1991)).

**B.  Section 1983 - Review of Applicable Law**

        Section 1983 provides a private cause of action for violations of federal law by state

officials.  *See* 42 U.S.C. § 1983.  "[S]ection 1983 does not create substantive rights; rather it

merely provides a remedy for deprivations of rights established elsewhere in the Constitution or

federal laws." *Estate of Smith v. Marasco*, 318 F.3d 497, 505-06 (3d Cir. 2003). "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). The initial question is therefore "whether the plaintiff has alleged a deprivation of a constitutional right at all." *Donahue v. Gavin*, 280 F.3d 371, 378 (3d Cir. 2002) (internal quotations omitted). Next, the Court determines whether the defendant is a "person acting under color of state law." *See Leshko v. Servis*, 423 F.3d 337, 339 (3d Cir. 2005) (holding that "whether the defendant is a state actor — depends on whether there is such a close nexus between the State and the challenged action that seemingly private behavior may be fairly treated as that of the State itself" (internal quotations omitted)). "[N]either a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 65 (1989) (explaining that "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office").

## C.  State-Created Danger – Review of Applicable Law

The Due Process Clause of the Fourteenth Amendment does not impose an affirmative duty on the state to protect its citizens from harms caused by private actors. *See DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489 U.S. 189, 195 (1989). An exception to this rule is known as the state-created danger doctrine. *See Kneipp by Cusack v. Tedder*, 95 F.3d 1199, 1211 (3d Cir. 1996). To assert a state-created danger claim under the Fourteenth Amendment Due Process Clause, a plaintiff must plead:

(1) the harm ultimately caused was foreseeable and fairly direct;
(2) a state actor acted with a degree of culpability that shocks the conscience;
(3) a relationship between the state and the plaintiff existed such that the plaintiff was a foreseeable victim of the defendant's acts, or a member of a discrete class

of persons subjected to the potential harm brought about by the state's actions, as opposed to a member of the public in general; and
(4) a state actor affirmatively used his or her authority in a way that created a danger to the citizen or that rendered the citizen more vulnerable to danger than had the state not acted at all.

*Bright v. Westmoreland Cty.*, 443 F.3d 276, 281-82 (3d Cir. 2006) (internal quotations omitted).

To adequately plead foreseeability under the first element, a plaintiff must "allege an awareness on the part of the state actors that rises to [the] level of actual knowledge or an awareness of risk that is sufficiently concrete to put the actors on notice of the harm." *Phillips*, 515 F.3d at 238. "Once the foreseeability element of the state-created danger test has been determined, the complaint must also allege that the attack or harm is a 'fairly direct' result of the defendant's acts." *Id.* at 239. Under the second element, "'[t]he exact degree of wrongfulness necessary to reach the 'conscience-shocking' level depends upon the circumstances of a particular case.'" *Mann v. Palmerton Area Sch. Dist.*, 872 F.3d 165, 171 (3d Cir. 2017) (quoting *Estate of Smith v. Marasco*, 430 F.3d 140, 153 (3d Cir. 2005)). *See also See Bridges v. Scranton Sch. Dist.*, 644 F. App'x 172, 178 (3d Cir. 2016) (holding that the conscience-shocking behavior required to state a substantive due process claim is a "stringent liability standard"). The bar for proving the third element is not terribly high and can exist where a plaintiff is a member of a group that is subject to potential harm brought about by the state's actions. *See Mann*, 872 F.3d at 172. The final element of a state-created danger claim requires a showing that the defendant affirmatively used his authority in a way that created a danger to the plaintiff or rendered him more vulnerable to danger. *See id.*

**D.  Substantive Due Process: Bodily Integrity and Excessive Force in Public Schools –**

**Review of Applicable Law**

"To establish a substantive due process claim, a plaintiff must prove the particular interest at issue is protected by the substantive due process clause and the government's deprivation of that protected interest shocks the conscience."  *Chainey v. Street*, 523 F.3d 200, 219 (3d Cir. 2008).  "[W]here another provision of the Constitution 'provides an explicit textual source of constitutional protection,' a court must assess a plaintiff's claims under that explicit provision and 'not the more generalized notion of 'substantive due process.'"  *Conn v. Gabbert*, 526 U.S. 286, 293 (1999) (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989)).

As a broad matter, "[t]he substantive component of the Due Process Clause 'protects individual liberty against certain government actions regardless of the fairness of the procedures used to implement them.'"  *Gottlieb ex rel. Calabria v. Laurel Highlands Sch. Dist.*, 272 F.3d 168, 172 (3d Cir. 2001) (quoting *Collins v. Harker Heights*, 503 U.S. 115, (1992)).  In *Gottlieb ex rel. Calabria*, 272 F.3d 168, the Third Circuit addressed the applicability of substantive due process to claims of excessive force in public schools.  To that end, the court adopted the following four-part "shocks the conscience" test for evaluating such claims:

> a) Was there a pedagogical justification for the use of force?; b) Was the force utilized excessive to meet the legitimate objective in this situation?; c) Was the force applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm?; and d) Was there a serious injury?

*Id*. at 173.  Notably, this inquiry is whether the wrongful action has a *constitutional* dimension. This is a more exacting standard than state tort or criminal assault laws.  *Thomas v. Bd. of Educ. of W. Greene Sch. Dist.*, 467 F. Supp. 2d 483, 488 (W.D. Pa. 2006).

**E.** *Monell* **Liability - Review of Applicable Law**

"[A] municipality cannot be held liable solely because it employs a tortfeasor -- or, in other words, a municipality cannot be held liable under § 1983 on a respondeat superior theory." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). "A plaintiff seeking to hold a municipality liable under section 1983 must demonstrate that the violation of rights was caused by the municipality's policy[2] or custom[3]." *Thomas v. Cumberland Cty.*, 749 F.3d 217, 222 (3d Cir. 2014) (citing *Monell*, 436 U.S. at 691). The policy or custom must be unconstitutional itself or be "the 'moving force' behind the plaintiff's deprivation of federal rights." *Bd. of the Cty. Comm'rs v. Brown*, 520 U.S. 397, 400 (1997); *Colburn v. Upper Darby Twp.*, 946 F.2d 1017, 1027 (3d Cir. 1991). The plaintiff must show either: (1) an employee acted pursuant to a formal policy or a standard operating procedure; (2) the alleged violations were taken by a person with policy-making authority; or (3) an official with such authority has ratified the unconstitutional actions of a subordinate. *See McGreevy v. Stroup*, 413 F.3d 359, 367 (3d Cir. 2005); *Phillis v. Harrisburg Sch. Dist.*, 430 F. App'x 118, 123 n.7 (3d Cir. 2011). The fact that the individual "-- even a policymaking official -- has discretion in the exercise of particular functions does not, without more, give rise to municipal liability based on an exercise of that discretion. The official must also be responsible for establishing final government policy respecting such activity before the municipality can be held liable." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481-83

---

[2]     "A municipal policy, for purposes of Section 1983, is a statement, ordinance, regulation, or decision officially adopted and promulgated by a government body's officers." *Torres v. City of Allentown*, No. 07-1934, 2008 U.S. Dist. LEXIS 50522, at *10-11 (E.D. Pa. June 30, 2008) (citing *Monell*, 436 U.S. at 690).

[3]     A custom, although not authorized by written law, has the force of law because it is such a permanent and well-settled practice. *Monell*, 436 U.S. at 690. A "custom may be established by proving knowledge of, and acquiescence to, a practice." *Watson v. Abington Twp.*, 478 F.3d 144, 156 (3d Cir. 2007).

(1986).  "[W]hether an official had final policymaking authority is a question of state law."  *Id.*
("We hold that municipal liability under § 1983 attaches where -- and only where -- a deliberate
choice to follow a course of action is made from among various alternatives by the official or
officials responsible for establishing final policy with respect to the subject matter in question.").

Failing to train and/or supervise municipal employees can also be a source of liability,
but only where "the failure amounts to 'deliberate indifference' to the rights of persons with
whom those employees will come into contact."  *Thomas*, 749 F.3d at 222.  The plaintiff must
show that "the deficiency in training actually caused the [injury]."  *City of Canton v. Harris*, 489
U.S. 378, 391 (1989).  A three-part test has been formulated to determine whether a
municipality's failure to train or supervise amounts to deliberate indifference.  *Carter v. City of
Philadelphia*, 181 F.3d 339, 357 (3d Cir. 1999).  "[I]t must be shown that (1) municipal
policymakers know that employees will confront a particular situation; (2) the situation involves
a difficult choice or a history of employees mishandling; and (3) the wrong choice by an
employee will frequently cause deprivation of constitutional rights."  *Id.*

**F.  Supplemental Jurisdiction - Review of Applicable Law**

Pursuant to 28 U.S.C. § 1367(c)(3), "district courts may decline to exercise supplemental
jurisdiction over a claim. . . if . . . [it] has dismissed all claims over which it has original
jurisdiction."  "A district court's decision whether to exercise that jurisdiction after dismissing
every claim over which it had original jurisdiction is purely discretionary."  *Carlsbad Tech., Inc.
v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009).  In deciding whether to exercise supplemental
jurisdiction, the district courts should consider factors such as judicial economy, convenience,
and fairness to litigants.  *See United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966) (holding
that "if these [factors] are not present a federal court should hesitate to exercise jurisdiction over

state claims, even though bound to apply state law to them"). The United States Supreme Court has further advised that "if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well." *Id.*

## IV.   ANALYSIS

### A.  Count I – State-Created Danger Claim

At the outset, it is unclear whether this case implicates the state-created danger doctrine as the harm complained of was inflicted by a public and not private actor. As noted, the doctrine is an "exception to the general rule that the Due Process Clause imposes no duty on states to protect their citizens from *private* harm." *L.R. v. Sch. Dist. of Phila.*, 836 F.3d 235, 242 (3d Cir. 2016) (emphasis added). Where the harm complained of is inflicted by a public actor, a plaintiff may proceed under the more direct § 1983, rather than the narrow state-created danger exception.

Accordingly, a number of District Courts in this jurisdiction have concluded that the state-created danger doctrine simply does not apply when the harm is perpetrated by a public actor. *See Jowett v. Churchill*, No. 20-13083, 2021 WL 3879084 at *8 (D.N.J. Aug. 31, 2021); *see also D.C. v. Pittsburgh Pub. Sch.*, 415 F. Supp. 3d 636, 664-65 (W.D. Pa. Dec. 3, 2019); *A.B. v. Vineland Bd. of Educ.*, No. CV1711509, 2019 WL 2354609 at *6 (D.N.J. June 4, 2019); *McGhee v. City of Philadelphia*, No. CIV.A.02-8992, 2003 WL 22518759 at *2 (E.D. Pa. Oct. 23, 2003). At least two other Circuit Courts have held the same. *See Doxtator v. O'Brien*, 39 F.4th 852, 867 (7th Cir. 2022) (holding that *Deshaney v. Winnebago County*, the case from which the state-created doctrine evolved, only applies to private acts of harm.); *see also Gray v.*

*Univ. of Colorado Hosp. Auth.*, 672 F.3d 909, 928 (10th Cir. 2012).  However, without such a clear pronouncement from the Third Circuit, the Court will address the elements of the claim.[4]

### 1.  Claim against McWilliams

Count I asserts a state-created danger claim against McWilliams.  In so doing, Parents argue that "McWilliams created the subject harm suffered by K.M. in that McWilliams was the actor who physically abused this child in the school setting, during the school day, on school property, and while working in her role as a teacher."  Compl. ¶ 62.  However, the court finds this reasoning circular.  McWilliams cannot create a danger of harm by doing the very harm complained of.  Count I is dismissed with prejudice as to McWilliams.[5]

### 2.  Claims against Schnyderite, Link, and NLSD

Parents argue that the NLSD Defendants created the harm by creating an atmosphere where McWilliams felt it was appropriate to harm K.M. and by refusing to reassign K.M. to a new classroom or otherwise offering a workable solution.  These claims fail as the harm incurred was neither foreseeable nor caused by the NLSD Defendants' affirmative actions.

The first element of a state-created danger claim requires that the harm incurred be a "foreseeable and fairly direct consequence" of the defendant's action.  *See Henry v. City of Erie*, 728 F.3d 275, 282 (3d Cir. 2013).  For the purposes of the instant motion, Parents must "allege an awareness on the part of the state actors that rises to level of actual knowledge or an

---

[4]    In *Stoneking*, the Third Circuit distinguished the case facts from *DeShaney* where the plaintiff's harm came from a public-school employee as opposed to a private actor.  *Stoneking v. Bradford Area Sch. Dist.*, 882 F.2d 720, 724 (3d Cir. 1989).  However, the court's holding rested on different grounds as the court held that the plaintiff could maintain her section 1983 claim under a *Monell* theory, independent of the viability of a state-created danger claim.  *Id.* at 725.

[5]    *See Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004) (holding that "if a complaint is vulnerable to 12(b)(6) dismissal, a District Court must permit a curative amendment, unless an amendment would be inequitable or futile")

awareness of risk that is sufficiently concrete to put the actors on notice of the harm." *Phillips*, 515 F.3d at 238.

      The harm in this case is the scratching, abrasions, and gouge marks on K.M.'s neck and throat.  Parents essentially argue that Schnyderite, Link, and NLSD knew that McWilliams was overwhelmed by K.M., required extra help in handling the child, and thought that she should be reassigned to another classroom.  Thus, it was foreseeable that McWilliams would physically harm K.M.  The Court disagrees.  This was not an instance where school administrators were aware of their employee's past sexual abuse and harassment.  *See e.g. B.W. v. Career Technology Center of Lackawanna County*, 422 F.Supp.3d 859 (M.D. Pa. Nov. 4, 2019); *Doe v. Plum Borough Sch. Dist.*, No. 2:17-CV-00032, 2017 WL 3492542 (W.D. Pa. Aug. 15, 2017).  In such cases, the sexual abuse was foreseeable because the school administrators were aware of past instances of sexual abuse by those very perpetrators.  But here, there is too much ground between a teacher feeling overwhelmed and a teacher scratching or gouging a child.  Even affording all reasonable inferences to the allegations in the Complaint, as this Court is required to do, this is an inference too far.

      The Court also finds that Parents have failed to allege sufficient allegations to establish the fourth element of a state-created danger claim, which requires that the state actor exercise their authority by an *affirmative* act.  *See Johnson v City of Phila*, 975 F.3d 394, 400 (3d Cir. 2020).  To be certain, courts often face "difficulty in drawing a line between an affirmative act and a failure to act." *L.R. v. Sch. Dist. of Philadelphia*, 836 F.3d 235, 242 (3d Cir. 2016).  This is not so in the instant case.  The conduct complained of is NLSD Defendants' refusal to reassign K.M. to another classroom and/or provide McWilliams with a workable solution.  Neither of these are *affirmative* acts which placed K.M. in harm's way.  *See G.S. v. Penn-Trafford Sch.*

*Dist.*, No. 19-3309, 2020 U.S. App. LEXIS 15326, at *7-8 (3d Cir. May 13, 2020) (holding that "a school's failure to respond to reports of bullying cannot give rise to liability under § 1983 because it is not an affirmative act").  Plaintiffs' Complaint also fails to aver any *facts* to support their claim that Schnyderite, Link, and NLSD created an atmosphere where McWilliams felt it was appropriate to harm K.M.

Accordingly, Plaintiffs have failed to state a claim against any Defendant with respect to Count I.  Count I is dismissed with prejudice as to NLSD and without prejudice as to Schnyderite and Link.[6]

### B.  Count III : Substantive Due Process – Bodily Integrity and Excessive Force

Because a constitutional violation is a prerequisite to the *Monell* claim asserted in Count II, the Court addresses Count III next.

The Complaint offers no factual averments as to the immediate context of the harm.  As such, the Court is unable to assess whether the use of force had a pedagogical justification, excessive or otherwise.  Even construing these initial elements in Parents' favor, the Court finds the claim lacking for want of serious injury.  The scratches, abrasions, and gouge marks fall far short of a "brutal and inhumane abuse of official power literally shocking to the conscience." *Gottlieb*, 272 F.3d at 175 (quoting *Hall v. Tawney*, 621 F.2d 607, 613 (4th Cir. 1980)).  These are strong words.  As such, courts have found the "constitutional line" sparingly crossed.  By way of example, in *Metzger*, the Third Circuit reversed summary judgment as to a student's due process claim where a teacher placed the student in a chokehold until he lost consciousness.  *Metzger By*

---

[6]      *See Alston*, 363 F.3d at 235; *Poe v. Se. Delco Sch. Dist.*, 165 F. Supp. 3d 271, 279 (E.D. Pa. 2015) (concluding that while violations of the students' "Fourteenth Amendment rights caused by the District's policies may properly be considered under the [students'] *Monell* claim, the District is not a proper defendant for the state-created danger claim" (citing *Sanford v. Stiles*, 456 F.3d 298, 314 (3d Cir. 2006)).

*& Through Metzger v. Osbeck,* 841 F.2d 518, 519 (3d Cir. 1988). At that point, the teacher released the student who fell face down and sustained "lacerations to his lower lip, a broken nose, fractured teeth and other injuries requiring hospitalization." *Id*. at 519-20.

Here, Parents offer no factual averments that would suggest a serious injury occurred. They have not averred that K.M. was hospitalized because of the incident. Nor have they averred that K.M. has suffered lingering pain or required continuing treatment as a result. All Parents have alleged is that K.M. suffered from scratches, abrasions, and gouge marks which were treated by an icepack. In so holding, the Court does not condone the behavior of McWilliams. Rather, the Court simply finds that the harm incurred, as pled, does not give rise to a constitutional claim. Accordingly, Parents have failed to state a claim against any Defendant with respect to Count III. Count III is dismissed with prejudice as to NLSD, but without prejudice as to all other Defendants.[7]

### C. Count II – *Monell* Liability

Initially, the Court notes that *Monell* liability applies only to municipalities, not to individuals. *See Lepre v. Lukus*, 602 F. App'x 864, 869 n.4 (3d Cir. 2015) (concluding that the district court erred in applying the *Monell* test to the § 1983 claims against the individual defendant). Count II is therefore dismissed with prejudice as to Schnyderite and Link.[8]

As to NLSD, for § 1983 liability to attach, Parents must show it was responsible for the underlying constitutional violation. "Accordingly, 'for there to be municipal liability, there . . .

---

[7]     *See Alston*, 363 F.3d at 235; *Poe*, 165 F. Supp. 3d at 279
[8]     Because the claim fails as a matter of law as to the individual defendants, amendment would be futile. *See Gass v. Matthews*, No. 18-2360, 2018 U.S. Dist. LEXIS 202100, at *8-9 (E.D. Pa. Nov. 28, 2018) (dismissing the individual defendants with prejudice because "Monell liability applies only to municipalities, not individuals" (citing *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 112-13 (3d Cir. 2002)).

must be a violation of [Plaintiffs'] constitutional rights.'" *Startzell v. City of Phila.*, 533 F.3d 183, 204 (3d Cir. 2008) (quoting *Brown v. Pa. Dep't of Health Emergency Med. Servs. Training Inst.*, 318 F.3d 473, 482 (3d Cir. 2003) (internal citation omitted).  Here, the lack of a constitutional violation, addressed *supra*, precludes the *Monell* claims.  *Id.*

Furthermore,

> failure to train, discipline or control can only form the basis for section 1983 municipal liability if the plaintiff can show both [1] contemporaneous knowledge of the offending incident or knowledge of a prior pattern of similar incidents and [2] circumstances under which the supervisor's actions or inaction could be found to have communicated a message of approval to the offending subordinate.

*Montgomery v. De Simone*, 159 F.3d 120, 127 (3d Cir. 1998).  "It is not sufficient merely to show that a particular [employee] acted improperly;" rather, the alleged failure to adequately supervise "must also cause the violation about which the plaintiff complains."  *See Strauss v. Walsh*, Nos. 01-3625, 02-4383, 2002 U.S. Dist. LEXIS 24717, at *10-11 (E.D. Pa. Dec. 17, 2002).

Parents' allegations refer to broad areas where training and/or supervision was inadequate and cite to numerous alleged policies without any factual support.  *See* Compl. ¶¶ 73-82.  For example, the allegation that the NLSD "did not properly discipline, investigate, or remedy known problems within the elementary school concerning the use of force in the classroom" is a legal conclusion styled as a factual allegation where it fails to plead any specific prior uses of force in the classroom.  *Id.* ¶ 74.  None of the other averments fare any better.  Paragraph seventh-five generally alleges that Defendants have failed to maintain an adequate system of review of instances of teacher misconduct or abuse.  *Id.* ¶ 75.  However, this is a legal conclusion that need not be accepted as true as there are no factual allegations that show the existence of past instances of misconduct or abuse.  Thus, these allegations are insufficient to state a claim.

*See McTernan v. City of York*, 564 F.3d 636, 658 (3d Cir. 2009) (holding that to satisfy the pleading standard, the plaintiff "must identify a custom or policy, and specify what exactly that custom or policy was"). *See also Kingsmill v. Szewczak*, 117 F. Supp. 3d 657, 672 (E.D. Pa. 2015) (finding that the plaintiff failed to allege well-pled facts in support of his *Monell* claim with respect to a policy or custom because the plaintiff's allegation regarding a police officer's prior misconduct and the City's alleged knowledge of it was merely "a legal conclusion styled as a factual allegation").

Consequently, Parents have failed to state a claim against NLSD with respect to Count II and it is dismissed without prejudice.

### D.  Supplemental Jurisdiction

Although this Court does not intend to exercise supplemental jurisdiction over the state law claims if no federal cause of action remains viable, the state law claims will not yet be dismissed because Plaintiffs are given leave to file an amended complaint.  If Plaintiffs choose not to file an amended complaint or are again unable to state a federal cause of action, supplemental jurisdiction will be declined, and all claims will be dismissed at that time. Plaintiffs will then have thirty days to file the state law claims in state court.  *See* 28 U.S.C. § 1367(d) ("The period of limitations for any claim asserted under subsection (a) [providing for supplemental jurisdiction] . . . shall be tolled while the claim is pending and for a period of 30 days after it is dismissed unless State law provides for a longer tolling period.").

### E.  Parents are granted leave to amend.

Parents are granted leave to file an amended complaint as to any federal claims dismissed without prejudice and, also, may include any amendments regarding the state law claims to address the alleged deficiencies identified in the Motion to Dismiss.

In filing an Amended Complaint, Parents are advised that "[i]ndividual state employees sued in their official capacity are [] entitled to Eleventh Amendment immunity because 'official-capacity suits generally represent only another way of pleading an action' against the state." *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 254 (3d Cir. 2010) (quoting *Hafer v. Melo*, 502 U.S. 21, 25 (1991)).[9]  Official capacity claims are indistinguishable from claims against the entity that employs the defendants.  *See Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) ("Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'") (quoting *Monell v. N.Y.C. Dept. of Soc. Servs.*, 436 U.S. 658, 690, n. 55 (1978)).  "[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity."  *Id*.

V.    **CONCLUSION**

Count I is dismissed because Parents have failed to aver facts which would render the harm foreseeable or the result of an affirmative act by Defendants.  Count III is dismissed because Parents have failed to aver facts from which the Court can reasonably infer a serious injury occurred.  Count II is dismissed as there exists no underlying constitutional violation to assert a *Monell* claim.  The Court will defer ruling on whether to exercise supplemental jurisdiction over the remaining claims because Parents are granted leave to amend in accordance with this Opinion.

---

[9]     Although a state can waive immunity, "Pennsylvania has not waived its immunity under Section 1983."  *Bartlett v. Kutztown Univ.*, No. 13-4331, 2015 U.S. Dist. LEXIS 21665, at *38 (E.D. Pa. Feb. 23, 2015). *See also* 1 Pa. C.S.A. § 2310 (The "Commonwealth, and its officials and employees acting within the scope of their duties, shall continue to enjoy sovereign immunity and official immunity and remain immune from suit except as the General Assembly shall specifically waive the immunity."); 2 Pa. C.S. § 8522(b) (listing the nine areas in which immunity has been waived).

A separate order follows.

BY THE COURT:


*/s/ Joseph F. Leeson, Jr.*
JOSEPH F. LEESON, JR.
United States District Judge